[Civ. No. 256. Third Appellate District.—March 19, 1907.]

## F. ERNEST ALLSOPP, Respondent, v. JOSHUA HENDY MACHINE WORKS, Appellant.

ACTION FOR ACCOUNTING—PLEADING—FINDINGS—AGENCY FOR RESALE OF PROPERTY—CONVERSION—SURPLUSAGE—CAUSE OF ACTION NOT CHANGED.—In an action for an accounting under an agreement for resale by defendant of property before sold by him to plaintiff, and intrusted to defendant as agent for resale, where it appears that a portion of the property was resold, and the complaint and evidence and findings support the cause of action for an accounting, an averment and finding that the property not resold was misappropriated by defendant to his own uses, do not change the cause of action to one of tort for conversion, but are immaterial and may be disregarded as surplusage.

ID.—LIABILITY OF AGENT TO ACCOUNT—ABUSE OF TRUST—COMMINGLING OF MACHINERY.—The defendant having undertaken as agent for plaintiff to sell mining machinery intrusted to it for resale, and having returned some of it to persons from whom it was pur-

chased and received credit therefor, and having in abuse of its trust, commingled the residue of the machinery with its own stock, so that its identity was substantially lost, and having sold it as its own, it may properly be held liable to account as of the date when the property was intrusted to it for resale.

ID.—AGENT BOUND TO UTMOST GOOD FAITH.—An agent is charged with the duty of acting in the utmost good faith for the promotion of the interests of the principal.

ID.—DEMAND BEFORE SUIT FOR ACCOUNTING.—Where an agent has been guilty of a breach of duty in failing to notify the principal of money collected, or has converted the property to his own use, there is no necessity of a demand before suit for an accounting; but where the plaintiff alleged and proved a demand and refusal of the defendant to account, the requirements of the law were satisfied.

ID.—STATUTE OF LIMITATIONS—PLEADING—EXPRESS TRUST—CONCEALED BREACH.—The statute of limitation applicable to an accounting between an agent and the principal is section 343 of the Code of Civil Procedure, and cannot be invoked if not pleaded; nor could the statute begin to run, the relation being one of express trust, where no knowledge of a repudiation of the trust relation was brought home to the knowledge of the principal, but the breach of trust was concealed from him.

ID.—VALUE OF PROPERTY INTRUSTED—ESTOPPEL—SUPPORT OF FINDING.—Upon general principles of equity, the defendant should be estopped from contending that the value of the property intrusted to it for resale was less than the amount paid therefor by plaintiff to defendant, and the evidence is held to sustain a finding that there was no difference in value.

ID.—COSTS—PERCENTAGE IN SAN FRANCISCO.—In a litigated case in San Francisco, the plaintiff recovering is entitled to the percentage allowed by the statute applicable thereto which is still in force.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial, and from an order refusing to retax costs. M. C. Sloss, Judge.

The facts are stated in the opinion of the court.

E. B. Young, for Appellant.

Charles W. Slack, for Respondent.

BURNETT, J.—The complaint alleges that on or about June 17, 1897, the plaintiff and the defendant entered into

a contract whereby the defendant agreed to sell to the plaintiff a five-stamp mill with certain accessories for the sum of $5,000; that thereafter by agreement the price was increased to $5,050; that thereafter, on or about the twenty-third day of September, A. D. 1897, the defendant offered to deliver the said property to the plaintiff and he accepted the said offer, and thereupon he paid defendant the sum of $5,050. There is no denial of these allegations. It is further alleged that on or about October 4, 1897, the defendant agreed with the plaintiff to resell for him the said property and to account for the sales as they were made, and thereupon defendant took possession of the property for said purpose. The answer admits the agreement, but denies that the defendant took possession for the purpose of resale, but alleges that it always had possession, and that no part of the property was ever delivered to plaintiff but had been left with defendant at the request of plaintiff. The finding of the court in that behalf was in accordance with the foregoing allegations and admissions of the answer.

It is further alleged in the complaint that the defendant resold different portions of the property.for sums exceeding $3,500, and appropriated to its own use the remainder of the property; that the defendant has never accounted to the plaintiff for the property or the proceeds of the sales thereof, nor has the defendant paid to the plaintiff any of the proceeds except the sum of $3,500; and that on or about April 4, 1902, the plaintiff demanded an accounting of defendant, and the prayer is for an accounting for the property and the proceeds of the sale.

The answer denies that the defendant resold any of the property for any sum in excess of $3,500; denies that it appropriated to its own use any of the property; denies that it has never accounted to the plaintiff for the property or the proceeds of the sales thereof; admits the demand for the accounting, denies its refusal to account, and alleges the payment to plaintiff of all the proceeds of the sales of the property. The finding of the court on this issue is ''that the defendant resold a portion of the said property; but the defendant is unable to account for the moneys received from such resales; and that the defendant has never accounted to the plaintiff for the said property, or for the proceeds of the resales thereof. That the defendant, on or about the said

fourth day of October, 1897, appropriated to its own use all of the said property; and that the value of said property at said date was and is the sum of $4,040. That the defendant has not paid to the plaintiff any of the proceeds of the re-sales of the property except the sum of $3,500, paid as fol-lows: $1,000 April 6, 1899, $1,000 Aug. 10, 1899, $500 Nov. 24, 1899, and $1,000 April 21, 1900.'' There is also a finding that the defendant failed and refused to account to plaintiff. The court also finds that the action is not barred by the statute of limitations as pleaded by defendant, and the judg-ment is in favor of plaintiff for the sum of $1,417.57.

The judgment is manifestly just and finds ample support in the evidence. The zeal and sincerity with which they are urged, however, are probably justification for the specific con-sideration of the points made by appellant.

It is contended that the evidence is insufficient to justify the decision and that said decision is against the law and the evidence. The argument is that the action is for an account-ing, and the court finds the property was converted by ap-pellant and bases its judgment upon the rule of damages for conversion, as provided in section 3336, Civil Code, whereas, it is urged, the evidence does not justify the conclusion that the appellant appropriated the property to its own use.

Both parties agree that the action is for an accounting. The gist of such an action is the failure to account. The finding that the defendant ''appropriated to its own use all of the said property'' is obviously broader than the allegation of the complaint *''and has appropriated to its own use the remainder of the said property,''* but this is immaterial, and the contention of the insufficiency of the evidence to show any conversion is of no consequence in view of the fact that a cause of action for an accounting is sufficiently pleaded and supported by the evidence, and the allegation and finding of conversion may be disregarded as surplusage. The allegation of an appropriation of the property by the defendant was unnecessary and did not change the action into one of tort. (*State* v. *Chedwick,* 10 Or. 423; *Segelken* v. *Meyer,* 94 N. Y. 583.) But, as pointed out by respondent, there is abundant evidence to show—if it be deemed important—that the prop-erty was converted by appellant.

The evidence satisfies the requirement of the rule laid down in *Steele* v. *Marsicano,* 102 Cal. 666, [36 Pac. 920], to the

effect that "in order to charge the defendant with the conversion of the plaintiff's goods, he must be shown to have done some act implying the exercise or assumption of title, or of a dominion over the goods, or some act inconsistent with the plaintiff's right of ownership, or in the repudiation of such right." It is not apparent what other act could have been done by appellant in respect to the property that would more fully carry with it the implication of the assumption of title to and dominion over the property, or repudiation of any right of respondent in and to the ownership of said property. The defendant having undertaken as an agent to sell the property for plaintiff, having returned some of the property to the persons from whom it was purchased and receiving credit therefor, and having placed the remainder with its own stock so that its identity was substantially lost, and having used and sold the property as its own without keeping any account of its transactions, is hardly in a position to urge that it should not be held liable for the value of the machinery as of the date of October 4, 1897, when it agreed in writing to dispose of the machinery as rapidly as possible and report the sales as they were made. As an agent, appellant was charged with the duty of acting in the utmost good faith for the promotion of the interests of the principal. Its conduct was hardly compatible with the requirements of the elemental principles of its trust and the canons of honorable dealing.

Section 2228, Civil Code, provides that: "In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind." And the doctrine is universally recognized that "the paramount and vital principle of all agencies is good faith, for without it the relation of principal and agent could not very well exist. So sedulously is this principle guarded, that all departures from it are esteemed frauds upon the confidence bestowed." (1 Am. & Eng. Ency. of Law, p. 1071.)

For further illustrations of the same doctrine we may cite: *Sterling* v. *Smith*, 97 Cal. 343, [32 Pac. 320]; *San Pedro Lumber Co.* v. *Reynolds*, 121 Cal. 74, [53 Pac. 410], and *Calmon* v. *Sorraille*, 142 Cal. 638, [76 Pac. 486]; *Burke* v. *Bours*, 92 Cal. 108, [28 Pac. 57].

In view of the foregoing, the trial court, with some justification at least, might have charged the defendant with the full price paid for the machinery by the plaintiff, but assuredly, the corporation could not expect a more generous concession than the reduction from the price of twenty per cent which was made by the court. The defendant, being unable to account for the property and its proceeds, could not complain at the action of the court in taking $4,040 as the amount due October 4, 1897, and, according to the well-settled rule of partial payments, computing interest and applying the payments made, and thus determining that the indebtedness of defendant was as found in the judgment. (*Estate of Den,* 35 Cal. 692; 16 Am. & Eng. Ency. of Law, p. 1036.)

Appellant's contention that a demand for the delivery of the property was required is likewise destitute of any merit. The appellant answers its own contention by asserting that "This is *not* an action for *conversion* but one for an accounting." But even if it were an action for conversion, under the facts and circumstances of the case no demand would be required. This is apparent from the cases cited by appellant: *Wood* v. *McDonald,* 66 Cal. 547, [6 Pac. 452] , *Remy* v. *Olds,* 88 Cal. 537, [26 Pac. 355], and *Merrill* v. *Merrill,* 95 Cal. 334, [30 Pac. 542]. In the Wood case it is said: "Proof of any circumstance which would satisfy a jury that a demand would be unavailing—as a refusal by defendant to listen to one, or a statement in advance that he will not deliver—will be sufficient to excuse proof of a demand. If there is proof that defendant had converted the property before or independent of the demand, such conversion—the material matter—will render the defendant liable."

"If there is an actual conversion no demand need be made." (Cooley on Torts, p. 530.)

"Where, however, the agent has been guilty of a breach of duty, as where he fails to render an account of sales or to notify the principal of the collection of money within a reasonable time or has converted the property to his own use, there is no necessity for demand before suit." (1 Am. & Eng. Ency. of Law, p. 1092.)

As before seen, the action was for an accounting, and plaintiff alleged and proved that he demanded that an account be made to him by defendant and its failure and refusal to do so. In that behalf he satisfied the requirements of the law.

In support of its plea of the bar of the statute, appellant says: "If the facts stated in the complaint constitute a case of wrongful conversion of personal property by appellant, . . . then the claim of respondent is barred by the statute of limitations, because the conversion is found to have been committed on the fourth day of October, 1897, and his suit was instituted on the twenty-ninth day of April, 1902." But it is a sufficient answer to say that the wrong sections of the Code of Civil Procedure were pleaded by defendant, viz.: Section 337 and subdivision 1 of section 339. The section applicable to conversion is section 338, subdivision 3 (*Lowe* v. *Ozmun*, 137 Cal. 257, [70 Pac. 87], and *Horton* v. *Jack* (Cal.), 37 Pac. 652); and the section applicable to causes of action for an accounting is section 343. (*West* v. *Russell*, 74 Cal. 544, [16 Pac. 392].)

But again, there was an express trust created by the transaction between the parties, and the statute of limitations would not begin to run until there was brought home to plaintiff knowledge of the repudiation of the trust or the violation of its terms on the part of defendant.

In *San Pedro Lumber Co.* v. *Reynolds*, 121 Cal. 74, [53 Pac. 410], it is said: "The statute of limitations cannot be successfully invoked. Reynolds was acting in a fiduciary capacity. Such of his acts as resulted in loss to the corporation were concealed breaches of trust. The statute of limitations would not begin to run in his favor, so as to enable him to escape the results of an accounting, until after knowledge by his principal of his derelictions. In this case the accounting was promptly demanded after discovery." And likewise it may be said here that plaintiff acted speedily and without unnecessary delay.

In 19 American and English Encyclopedia of Law, page 187, it is declared: "As long as the relation of principal and agent continues, there is a privity between the parties, and there is nothing to set the statute in operation as to claims and accounts between them. The position of the agent is that of a trustee, and claims against him are governed by a rule similar to that controlling trustees. The assertion by the agent of an adverse right or his failure to discharge a duty to his principal arising out of his agency does not set the statute in motion until called to the attention of the prin-

cipal or until he knows, or with reasonable diligence might have known thereof.''

In 2 Perry on Trusts, section 863, the rule is stated as follows: ''As between trustee and *cestui que trust,* in the case of an express trust, the statute of limitations has no application, and no length of time is a bar. Against an express and continuing trust time does not run until repudiation or adverse possession by the trustee and knowledge thereof on the part of the *cestui.* . . . The trustee must clearly repudiate the trust and assume an adverse position, with notice to the *cestui,* before the statute can begin to run.'' But the principle is too well established to need further citation of authorities.

In its closing brief appellant seems to have abandoned all the contentions of the opening brief and to have planted itself firmly upon the proposition that ''there is no evidence to support Finding 6 of the trial court 'that the value of the said property at the last-mentioned date (Oct., 1897) was and is the sum of $4,040,' nor the judgment of said court that respondent recover from appellant a sum of $1,417.57, or any sum.'' The argument in which appellant indulges is more curious than convincing. Upon general considerations of equity it would seem that appellant should be estopped from contending that the property was worth less than $5,050, the amount paid for it by respondent. But there is evidence to sustain the finding within the rule prescribed by section 2237, Code of Civil Procedure, that ''a trustee who uses or disposes of the trust property contrary to section 2229 may, at the option of the beneficiary, be required to account for all profits so made, or to pay the value of its use, and, if he disposed thereof, to replace it, with its fruits, or to account for its proceeds with interest.'' The testimony of the president of the corporation is sufficient support for the finding of the court. He said that the machinery was sold to Mr. Allsopp for the fair market value; and when asked if that was not the value at the time it was taken back for resale his answer was, ''I could not say positively. I don't know as there was any particular difference. I don't think there was any. appreciable difference.'' There are other circumstances justifying the court's conclusion, but the foregoing is sufficient.

In addition to the appeal from the judgment and order denying the motion for a new trial, there is also an appeal

from an order of the court refusing to strike from the cost bill the amount of $20.88, percentage allowed under an act of the legislature entitled "An Act to regulate fees in the City and County of San Francisco," Statutes of 1865-66, page 66. In the recent case of *Doyle* v. *Eschen et al., ante,* p. 55, [89 Pac. 836], we had occasion to consider the question whether the provision involved herein is still in force, and we reached the conclusion that it had not been repealed. We see no reason to modify the views therein expressed.

The judgment and orders are affirmed.

Chipman, P. J., and Hart, J., concurred.